IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GUY THOMAS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-16-2609 |
| EASTERN CORRECTIONAL INSTITUTION, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

## MEMORANDUM OPINION

In this 42 U.S.C. § 1983 civil rights action, Plaintiff Guy Thomas alleges that Defendants Eastern Correctional Institution ("ECI") and ECI Correctional Officer Dominick Timmons[1] ("Officer Timmons") violated his federal constitutional rights when they (1) failed to protect him from harm from fellow inmates and then (2) denied him constitutionally adequate medical care for his resulting injuries. Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 14). Thomas filed a Response in Opposition (ECF No. 16), to which Defendants filed a Reply (ECF No. 18). The Court finds no hearing necessary to resolve the pending Motion. See Local Rule 105.6 (D.Md. 2016). For the reasons stated below, the Court will grant the Motion.[2]

### I.   BACKGROUND

**A.   The Incident**

On July 18, 2016, Thomas sued ECI only, alleging that on June 18, 2016 at approximately 6:00 p.m., he was at recreation when unknown inmates assaulted and stabbed him in his arm, back, and chest (the "Incident"). (Compl. at 3, ECF No. 1). Thomas asserts that the

---

[1] The docket shall be amended to include Officer Timmons's first name.
[2] The Court will also grant nunc pro tunc Defendants' Motion for an Extension of Time to Answer the Complaint (ECF No. 13).

Incident occurred while Officer Timmons was "working the tier." (Id.). On August 3, 2016, the Court directed Thomas to supplement the Complaint to name the individual responsible for failing to protect him and to provide supporting details. (ECF No. 4). Thomas filed an Amended Complaint in which he added Officer Timmons as a defendant. (Am. Compl., ECF No. 6).

Thomas alleges that Officer Timmons escorted him to the medical department at approximately 11:00 p.m. on June 18, 2016. (Id. at 2). Thomas asserts that the nurses were careless and unhelpful, only placing a bandage on his arm. (Id.). Thomas alleges that he received no stitches, pain medicine, or tetanus shot because a nurse was rushed due to a shift change.[3] (Compl. at 4; Am. Compl. at 2, 4). According to Thomas, when he awoke the following morning, the bandage was soaked with blood and no one changed his dressing. (Compl. at 4). Thomas asserts that he wrote sick-call slips but did not receive medical treatment. (Id.). Thomas alleges that the Medical Department sent a nurse on July 13, 2016 to ask him to sign a "waiver,"[4] but he refused because he had not received treatment. (Compl. at 2, 4–5).

**B.     ARPs**

Thomas states that on June 27, 2016, he submitted an Administrative Remedy Procedure ("ARP") request. (Id. at 4). According to Thomas, he wrote in the ARP that he "did not seek any medical treatment, that [he] was in pain, and that he was seeking an [sic] lawsuit." (Id.). It is unclear why Thomas' states that he "did not seek any medical treatment" as this statement appears to contradict his claims. The ARP reads:

> I was sent to medical on 6/18/16 for getting stabbed. I was placed in Bld. 5 without any bandages or ointment after nurses concealed my wound. After showers, I have no type of medical treatment. I put in sick calls but they got ignored. I'm seeking an [sic] lawsuit due to the negligence.

---

[3] Thomas does not name any medical providers as defendants.
[4] The exact nature of the waiver is unstated.

2

(ARP ECI 1430-16, ECF No. 14-7 at 3).

After investigation, the Warden determined that Thomas' allegations were unfounded and dismissed the ARP on July 21, 2016. The Warden wrote:

> Your request for Administrative Remedy has been investigated and is hereby Dismissed; on 6/18/16, you were seen by nursing after being stabbed. At this time an assessment was done. Per the nurse's documentation, you were uncooperative during the visit. Upon examination, you were asked have you ever had a tetanus shot. You replied "I don't need it, I told you I fell on rocks." You had a steri strip and a pressure dressing applied at that time and then released to custody.

Thomas neither appealed the Warden's decision nor filed a grievance with the Inmate Grievance Office ("IGO"). (Donnelly Decl,. ECF No. 14-8; Neverdon Decl., ECF No. 14-9).

On August 12, 2016, Thomas filed a second ARP request, ECI-1826-16, this time stating that he had submitted "request slips" but received no response. Thomas also wrote in the ARP that "a situation happened with me getting stabbed on 6-18-16. You wrote me back and dismissed my A.R.P. stating that the nurse said I refused medical treatment. I never refused any medical treatment. I have not yet gotten an answer or a response." (ECF No. 16-1 at 1–2). The ARP continued, "I am asking for the info of the nurse and c.o's [sic] that were involved on that night of 6/18/16." (Id.). The ARP was dismissed for procedural reasons, referencing ECF 1430-16. Thomas neither appealed the disposition of the second ARP nor filed a grievance with the IGO. (Donnelly Decl., ECF No. 14-8; Neverdon Decl., ECF No. 14-9). Thomas alleges that the "prison" was aware he was filing a lawsuit and refused to identify the officer and the nurse to "cover it up." (Am. Compl. at 4–5).

## II.  DISCUSSION

**A.  <u>Standard of Review</u>**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the

3

Court's discretion under Rule 12(d).  See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012).  This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery."  E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).  Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise sufficiently the

issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). The Fourth Circuit has warned that it "place[s] great weight on the Rule 56[d] affidavit." Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Indeed, failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961).

Here, the parties were on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Burnett does not make an informal request for discovery, let alone file a Rule 56(d) affidavit. Accordingly, the Court will construe Defendants' Motion as a Rule 56 motion for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.   Analysis**

    **1.   ECI**

Defendants argue that ECI cannot be sued under 42 U.S.C. §1983 for violations of Thomas' constitutional rights because ECI is not a "person" amenable to suit under §1983. Defendants are correct. See Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D.Va. 1999) (holding that jails are not "persons" amenable to suit under 42 U.S.C. § 1983), aff'd in part and vacated in part on other grounds, No. 99-6950, 2000 WL 20591 (4th Cir. 2000); see also Allison v. California

Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969) (holding that a prison was not a "person" under 42 U.S.C. § 1983). Accordingly, the Court will enter summary judgment for ECI on all of Thomas's claims.

### 2.     Officer Timmons

Officer Timmons moves for summary judgment on two alternative grounds: (1) Thomas failed to exhaust administrative remedies; and (2) based on the undisputed record evidence, Officer Timmons did not fail to protect Thomas from harm or act with deliberate indifference to any serious medical needs. The Court reviews these grounds in turn.

#### a.     Failure to Exhaust Administrative Remedies

Inmates are required to exhaust "such administrative remedies as are available" before filing a lawsuit. 42 U.S.C. § 1997e(a), see also Ross v. Blake, _U.S._, 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). The Prison Litigation Reform Act ("PLRA") provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. Ross, 136 S.Ct. at 1857; Jones v. Bock, 549 U.S. 199, 219 (2007). Indeed, a court may not excuse a failure to exhaust. Ross, 136 S.Ct. at 1856 (explaining

"[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion" (citing Miller v. French, 530 U.S. 327, 337 (2000))).  The exhaustion requirement has three purposes: it 1) allows a prison to address complaints about the program it administers before being subjected to suit; 2) reduces litigation to the extent complaints are satisfactorily resolved; and 3) prepares a useful record in the event of litigation.  Jones, 549 U.S. at 219.  An inmate's failure to exhaust administrative remedies is an affirmative defense.  Accordingly, a defendant bears the burden of proving that the inmate had remedies available to him of which he failed to take advantage.  Jones, 549 U.S. at 211–12, 216; Moore, 517 F.3d at 725.

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process.  See Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04.  The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR, tit. 12 §07.01.05A.  If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction.  COMAR, tit. 12 §07.01.05C.  If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO").  See Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the IGO.  See Md. Code Ann., Corr. Servs. § 10-207; COMAR, tit. 12 § 07.01.06A.  If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  Md. Code Ann. Corr. Servs. § 10-207(b)(1); see COMAR, tit. 12 § 07.01.07B.  The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  See Md.

Code Ann. Cts. & Jud. Proc. § 10-208(c); COMAR tit. 12 § 07.01.07-.08.  The conduct of such hearings is governed by statute.  See Md. Code Ann., Corr. Servs. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  A decision concluding that the inmate's complaint is wholly or partly meritorious, however, constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  See Md. Code Ann., Corr. Servs. §10-209(b)–(c). The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies.  See id. §10-210.

Thomas does not dispute his failure to exhaust his administrative remedies.  He acknowledges that he "went straight to file this case" because he "kept getting denied" or "no answer" to his ARP requests.  (ECF No. 16. at 2).  It is undisputed that Thomas neither appealed the Warden' denial of his two ARPs nor filed a grievance with the IGO.  (Donnelly Decl. ECF No. 14-8; Neverdon Decl. ECF No. 14-9). Thomas does not argue that the ARP process was unavailable to him.  And, what is more, Thomas's ARPs fail to mention Officer Timmons, much less assert that Officer Timmons failed to protect Thomas or denied him constitutionally adequate medical care.  The Court concludes, thus, that Officer Timmons is entitled to judgment on all of Thomas's claims because Thomas failed to exhaust administrative remedies.

    b.   **Merits of § 1983 Claims**

Even assuming Thomas exhausted administrative remedies, the Court concludes that based on the undisputed record evidence, Officer Timmons would be entitled to judgment as a matter of law that he did not fail to protect Thomas from harm or deny him constitutionally adequate medical care.

9

### i.     Failure to Protect from Harm

To prevail on an Eighth Amendment claim from failure to protect from harm, an inmate must establish that a defendant exhibited deliberate or callous indifference to a specific known risk of harm.  See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987).  "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; see also Rich v. Bruce, 129 F.3d 336, 339–40 (4th Cir. 1997).  "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety."  Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015).

In his declaration, Officer T. Ford, the officer-in-charge during the Incident, states that although Officer Timmons was taken off his post for a temporary assignment on June 18, 2016 during the 3 pm to 11 pm shift, Officer Timmons was replaced by another officer so that the post remained attended.  (Ford Decl., ECF No. 14-3).  Officer Timmons attests that he did not leave his post unattended or have information that Thomas was at risk of attack by other inmates.  (Officer Timmons Decl. ¶¶ 10, 11, ECF No. 14-4).  Additionally, Susan Shumaker, ECI Litigation Coordinator, declares that at the time of the alleged incident, Thomas had no known enemies at ECI.  (Shumaker Decl. ¶ 3, ECF No. 18-1).

Because it is undisputed that Officer Timmons was not present during the time of the alleged incident and Officer Timmons has no information that Thomas was at risk of assault, the Court concludes as a matter of law that Officer Timmons did not act with deliberate or callous indifference to a specific known risk of harm to Thomas.

### ii. Denial of Medical Care

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must prove that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A serious medical need " is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, members of the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. Farmer, 511 U.S. at 837. Prison officials are not liable for relying on the medical recommendations of medical personnel. See Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir. 1990).

Officer Timmons offers the following statements in his sworn declaration. While conducting rounds at approximately 10:45 pm, Officer Timmons observed Thomas sitting in his cell with a bloody rag taped to his arm. (Officer Timmons Decl. ¶ 4). Officer Timmons then escorted Thomas to ECI's medical unit. (Id. ¶ 6). Officer Timmons was not involved in Thomas' medical treatment because he is unauthorized to provide medical care to inmates and has no authority to direct medical staff to perform medical procedures or treatments. Officer

11

Timmons did not interfere with Thomas' medical treatment. (Id. ¶¶ 9, 12). Thomas refused to provide a statement, stating that he "fell on the rocks." (Id. ¶ 7).

Thomas fails to refute Officer Timmons' sworn statements that he was neither involved in providing medical care after the alleged assault nor interfered with any medical care that ECI medical personnel may have provided. It is uncontroverted that upon observing Thomas' injuries, Officer Timmons promptly escorted him to the medical unit. The Court concludes, therefore, that Officer Timmons is entitled to judgment as a matter of law on Thomas's claim for denial of medical care.

### III.   CONCLUSION

For the foregoing reasons, the Court will construe Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 14) as a motion for summary judgment, and GRANT it as to all claims against all Defendants. A separate Order follows.

Entered this 27th day of July, 2017

/s/
_____
George Levi Russell, III
United States District Judge